**UNITED STATES of America,**
**Appellant,**

v.

**Rene BUSSOZ, Appellee.**

**No. 13865.**

United States Court of Appeals,
Ninth Circuit.

Jan. 15, 1955.

Rehearing Denied March 9, 1955.

Laughlin E. Waters, U. S. Atty., Robert K. Grean, Robert S. Thompson, Asst. U. S. Attys., Los Angeles, Cal., for appellant.

Richard F. C. Hayden, Beverly Hills, Cal., for appellee.

Before STEPHENS and FEE, Circuit Judges, and GOODMAN, District Judge.

GOODMAN, District Judge.

On September 20, 1949, appellee filed his petition for naturalization in the United States District Court for the Southern District of California. The United States moved for an order denying the petition. The principal ground of the motion (which was the issue below and here) was that appellee had forever debarred himself from citizenship by applying for and obtaining relief from military service in the armed forces of the United States under Section 3(a) of the Selective Service Act of 1940,[1] on the ground that he was a citizen of a neutral country. The District Court denied the motion of the United States and ordered appellee admitted to citizenship. The United States appealed.

Appellee, a national of France, was lawfully admitted to the United States for permanent residence in 1939 and has resided here continuously since. On April 5, 1943, during World War II, appellee filed with the local Board, where he was registered, pursuant to Section 3(a) of the Selective Training and Service Act of 1940, as amended, an application, on a form provided by the Selective Service System, for relief from military duty upon the ground that he was a citizen of France, which he claimed to be "neutral in the present war." There is no question that appellee fully understood that in making the application he would, pursuant to Section 3(a), be forever debarred from becoming a citizen of the

[1]. Section 3(a) of the Selective Training and Service Act of 1940, as amended, 54 Stat. 885, 50 U.S.C.App. § 303(a) [now 50 U.S.C.A.Appendix, § 454], provides:

"Sec. 3(a) Except as otherwise provided in this Act, every male citizen of the United States, and every other male person residing in the United States, who is between the ages of eighteen and forty-five at the time fixed for his registration, shall be liable for training and service in the land or naval forces of the United States. Provided, That any citizen or subject of a neutral country shall be relieved from liability for training and service under this Act if, prior to his induction into the land or naval forces, he has made application to be relieved from such liability in the manner prescribed by and in accordance with rules and regulations prescribed by the President, but any person who makes such application shall thereafter be debarred from becoming a citizen of the United States".

United States because he specifically so stated in his written application to the local board.[2] Previously on September 29, 1942, the Director of Selective Service, pursuant to a regulation[3] which defined "a citizen of a neutral country" as a citizen "of a country which is neither a cobelligerent nor an enemy country," had determined that France, at the time, was a neutral country.[4] This determination was in effect on April 5, 1943.

The record before us is somewhat unorthodox. The petition was heard by the District Judge and evidence admitted and certain exhibits introduced on July 21, 1952. The cause was continued for further hearing to July 28, 1952. At that time certain exhibits were admitted and others marked for identification. At the conclusion of the hearing, the District Judge inquired as to whether or not information could be obtained from the State Department or from the Selective Service Department as to the status of France on April 5, 1943. The Naturalization Examiner stated that he would make every effort to obtain such information. The Court then took the matter under submission and requested that any additional evidence be furnished to the Court by September 1, 1952. Apparently no additional documentary data was furnished to the Court by the Naturalization Examiner by September 1st, because on September 29, 1952, the judge filed his memorandum opinion, in which he decided that France was *not* a neutral and ordered judgment in favor of petitioner on findings of fact to be presented not later than October 15, 1952. On November 10, 1952, the Court conducted further proceedings. It admitted in evidence certain exhibits, namely exhibits D to K furnished by the Naturalization Examin-er and which had previously, on October 23, 1952, been marked for identification. It then, on the same day, reaffirmed its decision in favor of petitioner and signed the findings and conclusions which appear in the printed record. On December 12, 1952, it entered an order admitting appellee to citizenship. No reference was made in the findings to the exhibits which the Court had admitted on November 10, 1952. We learn these facts because the documents admitted as exhibits by the Court in its minute order of November 10th, not having been included in the printed record on appeal, were sent up to this court and were before us at the time of the argument and submission of the cause. It has not been explained why these important documents were omitted from the printed record.

Appellee contended below as he does here, that the determination of the Director of Selective Service, that France was a neutral was erroneous. He presented below, at the hearing on July 21, 1952, and the Trial Court considered, a letter dated August 7, 1946 signed by one Walkinshaw, Chief of the Public Views and Inquiries Section, Division of Public Liaison of the Department of State, in which Walkinshaw stated that during World War II, France never had the status of a neutral country.

As appears from its memorandum decision of September 29th, the trial court was of the opinion that there was a conflict between two departments of the government as to France's status. It apparently believed that such a conflict arose as between the determination of the Director of Selective Service, on the one hand, and the State Department, (as evidenced by the Walkinshaw letter of

**2.** Appellee had a free choice of alternatives, Moser v. U. S., 341 U.S. 41, 71 S. Ct. 553, 95 L.Ed. 729.

**3.** Title 32, Code of Federal Regulations (Cumulative Supplement, § 601.1(c) provided: "The term 'citizen or subject of a neutral country' is used to designate an alien who is a citizen or subject of a country which is neither a cobelligerent country nor an enemy country" * * *.
 This was a fair and reasonable regulation, consistent with the Selective Service Act. U. S. v. Obermeir, 2 Cir., 186 F. 2d 243, 247; In re Molo, D.C., 107 F. Supp. 137.

**4.** Local Board Release No. 112, Respondent's Ex. A, below.

1946) [4a] on the other hand. Thereupon, the Court proceeded on November 10, 1952, to make its own decision as to France's status, basing such conclusion on Walkinshaw's letter plus historical data set forth in the World Almanac and Encyclopedia Britannica.

For some unclear reason, the District Court failed to take into account appellant's exhibits admitted on November 10, 1952. Had it done so, it would not have fallen into the error of incorrectly resting decision upon the predicate announced in its memorandum decision of September 29th. For respondent's (appellant here) exhibits D and E, admitted on November 10, 1952, show beyond any question whatever that not only did the Director of Selective Service determine that France was a neutral at the time in question, but also that he did so upon the *written official approval* and advice of the Secretary of State. Under these circumstances, there was no proper basis for the Court's affirmance, on November 10, 1952, of the views expressed in its memorandum decision of September 29th.

Thus, even assuming that a conflict between State Department and Selective Service was a basis for judicial determination of the question, the Court's decision was wrong, because, in fact, there was no conflict. The decision as to France's status was by the Director of Selective Service, concurred in by the Secretary of State.

Generally speaking, the Courts have approved the doctrine that the status of foreign countries as regards international relations is for the determination of the political or executive department of the government and not for judicial decision. Only when such determinations are obscure or unclear do the courts undertake the task. The State Department is the spokesman for the executive in foreign relations. But such problems generally involve questions of status for recognition purposes.[5]

 The District Court was in error in assuming that the State Department had any power or authority whatever to determine the status of aliens under the Selective Service Act.[6]

By Section 3(a) of the Selective Training and Service Act, the Congress fixed the conditions by which a neutral alien could be relieved from military duty. And it vested in the President the power to prescribe appropriate rules and regulations. Sec. 10 [7] of the same Act authorized the President to delegate his authority to the Director of Selective Service. The latter, acting for the President *under the Act,* made the determination as to who were neutral aliens, and he classified France as a neutral. Consequently, even if it be assumed to be an issue here, it is of no moment what the Secretary of State or any other department opined as to the status of aliens under the Selective Service Act.

 This case is governed by the Selective Service Act. The decisions of the Executive, whom Congress expressly

---

**4a.** The Walkinshaw letter was a mere ex post facto opinion of a personnel officer and not official in any sense.

**5.** The Courts have many times been called upon to consider the effect of recognition or non-recognition of foreign governments and the de jure or de facto character of their governments as affecting private rights. See Bank of China v. Wells Fargo Bank, D.C., 92 F.Supp. 920, notes 1 and 2; and same case, D.C., 104 F.Supp. 59, notes 3, 4, 5, 6, 7, 9 and 10.

**6.** It is true that the Director of Selective Service did call upon the Secretary of State for *advice* in determining the status of foreign countries (Respondent's

Exhibits D and E), but § 3(a) conferred the power to make such decisions solely upon the President and his statutorily authorized delegate. See also § 10; note 7.

**7.** § 10(a) (3) and (b), 50 U.S.C.App. § 310 [now 50 U.S.C.A.Appendix, § 460], authorized the President "to appoint, by and with the advice and consent of the Senate * * * a Director of Selective Service who shall be directly responsible to him * * * to carry out the provisions of this Act." "The President is authorized to delegate to the Director of Selective Service *only,* any authority vested in him under this Act". (Emphasis supplied.)

authorized to carry it out, are therefore not subject to judicial review, except in the rare event of arbitrary or capricious acts. No contention has been made that the Director acted arbitrarily or capriciously. It is only claimed that his decision was erroneous, which is perhaps just another way of saying that appellee did not agree with it.

The District Court had no power to make its own determination in this case, of France's status.[8]

Consequently the judgment must be reversed.

Order of the District Court reversed.

8. Some District Courts have made determinations of the status of neutral countries in cases involving § 3(a). See, e. g., Petition of Ajlouny, D.C., 77 F.Supp. 327 (where the Director's Regulation as to Palestine was held to be misapplied) and other cases mentioned in In re Molo, supra. Be that as it may, we hold that the District Court had no such power in this case.