Garrett Aiden CANNON, Petitioner-Appellant,

v.

UNITED STATES of America, Respondent-Appellee.

No. 119, Docket 26051.

United States Court of Appeals Second Circuit.

Argued Dec. 8, 1960.

Decided March 27, 1961.

Friendly, Circuit Judge, dissented.

Paul O'Dwyer, New York City (Howard N. Meyer, New York City, of counsel), for petitioner-appellant.

S. Hazard Gillespie, Jr., U. S. Atty., S. D. N. Y., New York City (Roy Babitt, Special Asst. U. S. Atty., New York City, of counsel), for respondent-appellee.

Before CLARK, WATERMAN and FRIENDLY, Circuit Judges.

WATERMAN, Circuit Judge.

This appeal requires us to interpret Section 315(a) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1426(a) (effective December 24, 1952), a section interpreted by the Supreme Court in Ceballos v. Shaughnessy, 1957, 352 U.S. 599, 77 S.Ct. 545, 1 L.Ed.2d 583, and exhaustively considered by this court in United States v. Hoellger, 2 Cir., 1960, 273 F.2d 760.

The section reads as follows:

"(a) Notwithstanding the provisions of section 405(b) of this Act, any alien who applies or has applied for exemption or discharge from training or service in the Armed Forces or in the National Security Training Corps of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on

such ground, shall be permanently ineligible to become a citizen of the United States."

Garrett A. Cannon, a native and citizen of Ireland, lawfully entered the United States for permanent residence on February 11, 1952. In August 1952, he registered with his local Selective Service Board pursuant to the requirements of the Selective Service Act, 50 U.S.C.A. Appendix, § 453. On August 21, 1952, the Irish Ambassador advised the United States Secretary of State that Cannon wished to be exempt from service in the Armed Forces, a permissible election for him to make under a treaty then in force between Ireland and the United States. This request, approved by the State Department, was forwarded to Cannon's local Selective Service Board, and on September 11, 1952 the Board classified him IV–C as an alien enjoying exemption from induction by virtue of treaty. On May 21, 1953 the Local Board supplied Cannon with a "Statement of Alien Form" which apprised him of the provisions of Section 315(a), and required him to apply for a continuation of his exempt status. Cannon forthwith filled out this form and returned it to the Board. More than a year later, on November 8, 1954, Cannon formally requested that his application for exemption be withdrawn. On the following day his Local Board complied with the request and reclassified him I–A. He was now subject to draft at order of the Board and, if found acceptable otherwise, to induction. Two years later, on November 10, 1956, Cannon was drafted, passed his tests, was inducted on November 30, 1956, and served a full two year term with the Armed Forces until he was honorably discharged in November 1958. Thereafter, on December 23, 1958, Cannon filed a petition for naturalization, and upon the recommendation of the Naturalization Examiner the petition was denied by the district judge below.

The district court held that when petitioner applied for relief from military service because of his alienage and thereafter was classified IV–C, he had become permanently ineligible for citizenship by virtue of the provisions of Section 315(a) and that petitioner's subsequent military service did not eradicate that permanent bar. Cannon appeals.

We reverse the judgment below and direct that hearings upon appellant's naturalization petition be reopened.

The decision below was handed down prior to our opinions in United States v. Hoellger, supra. In Hoellger, as here, a IV–C alien was later classified I–A and thereafter served in the Armed Forces. In that case, as here, the Government contended that, despite later full time military service by the alien, he had been relieved from service during the time he was classified IV–C, and therefore was permanently ineligible for citizenship. We rejected this argument and declined to give "relieved" the meaning the Government would ascribe to it—the meaning adopted by the court below in the present case.

In Hoellger we fully explored the purpose and intent of Section 315(a) of the 1952 Act and its interrelationship with its predecessor statutes, Section 3(a) of the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 303(a), and Section 4(a) of the Selective Service Act of 1948, 50 U.S.C.A.Appendix, § 454 (a). We pointed out that Section 315(a) had modified these prior acts. We showed that, prior to the 1952 Amendment, an alien's application for exemption from military service could be sufficient, without more, permanently to disqualify him from citizenship. This could be sufficient irrespective of any subsequent events or change of circumstances. However, we also demonstrated that under Section 315(a) this standard was changed, and that subsequent to December 24, 1952 an alien would not be permanently barred from citizenship unless he not only applied for such an exemption and had the exemption granted to him, but, additionally, was relieved from service on such ground. Ceballos v. Shaughnessy, supra.

Appellant's case and that of Hoellger are remarkably similar. Hoellger and Cannon were both classified IV–C by their respective Boards on September 11, 1952, prior to the December 24, 1952 effective date of the Immigration and Nationality Act of 1952. Hoellger was so classified on his Board's own initiative, Cannon because his Board learned through Selective Service channels that he had applied for it through the Irish Ambassador. After the effective date of the Act, in May of 1953, each of the two aliens received the "Statement of Alien Form" authorized to be sent to all IV–C registrants in order that a full understanding of the provisions of § 315(a) be conveyed to them. Each signed his form and returned it to his Board.

Appellant's case, however, differs from Hoellger in one respect.[1] Cannon voluntarily withdrew his application for exemption, whereas the treaty under which Hoellger was entitled to exemption was terminated and hence the exemption was terminated by an act other than Hoellger's act. This is the distinction the Government relies upon as sufficient to justify affirmance of the decree below, despite Hoellger. However, this difference does not persuade us. We reach the same result in both cases. By withdrawing his application for exemption the alien Cannon made himself subject to the draft if the Government chose to compel him to serve. It was the Government that called Cannon into the armed services. His was not a voluntary enlistment—he was a draftee, summoned into service when it purposed the Government to do so, fully two years after Cannon's classification was changed from IV–C to I–A.

It may well be that when Cannon submitted his application for exemption he was offering to exchange his opportunity to become a United States citizen in return for the Government's commitment exempting him from military service. However, it is equally certain that when he withdrew this application he made himself available to serve if the Government compelled him to do so. The withdrawal of the application for exemption did not reinstate Cannon's right to apply for citizenship. Not until his service in the armed forces was this right reinstated. Not inducting Cannon would have effectively relieved him from military service, and he would have been forever barred from citizenship. By compelling him to serve at a time chosen by the Local Board he was no longer relieved from service and thereby by this compulsion the Local Board returned to him his opportunity of applying for naturalization.

The decree below is reversed.

FRIENDLY, Circuit Judge (dissenting).

Cannon's petition for naturalization sets forth that, as a result of application in the fall of 1952 for exemption as an alien, he was "relieved from military service until November 8, 1954" by being classified IV–C; that in May, 1953, he again requested exemption on a form

---

1. It is arguable that the cases differ in a second respect, also, and that Sections 405(a) and 405(b), the saving clauses of the 1952 Act, which appear as notes following 8 U.S.C.A. § 1101, require that we deny citizenship to Cannon as a result of the Irish Ambassador's application to the State Department made prior to the effective date of the 1952 Act. The basis for making a distinction between the Cannon and Hoellger cases on this ground is fully discussed in United States v. Hoellger, supra, 273 F.2d at page 763, footnote 3, and 765, footnote 8. The Government does not seek to so distinguish the two cases, but with full understanding of this possible ground prefers (and we think wisely prefers) not to advance it. The Government case rests on the alien's own act in May 1953, when he personally signed the exemption form. We quote from the Government brief.

"We assume for the purpose of this appeal that had appellant not filed his application after the effective date of Section 315 (December 24, 1952), his previous exemption from military service, by virtue of his invocation of the treaty between Ireland and the United States, would not have debarred him from citizenship under that section."

reciting he had read § 315 of the Immigration & Nationality Act, 8 U.S.C.A. § 1426(a), which states that any alien who makes an application for exemption on the ground of alienage "and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States"; and that he was then continued in Class IV–C. No one disputes this brought down the statutory bar to citizenship; but Cannon urges, and my brothers agree, that he could raise it, provided only the Local Board took advantage of his offer. I do not so read the statute or the decisions.

In common speech "relieve" has the connotation of temporary, not necessarily permanent, surcease. The dictionary, a source not always to be disregarded, says that "relieve" means, among other things, "To free, wholly or partly, from any burden, trial, evil, distress, or the like"; "To release from a post, station, or duty"; or "To set free from an obligation." Webster's New International Dictionary, 2d ed. 1960. That is precisely what Cannon's applications and the Local Board's actions did, and the statute prescribes permanent ineligibility for citizenship as the consequence. Admittedly Cannon would have remained "relieved" if he had not opted no longer to be. He was free to make that decision, and it may have been laudable for him to do so, but this did not obliterate the consequences of the past.

Ceballos v. Shaughnessy, 1957, 352 U.S. 599, 606, 77 S.Ct. 545, 549, 1 L.Ed.2d 583 does not assist petitioner. Although the opinion said that § 315 of the 1952 Act "enacts a two-pronged requirement" of application and relief or discharge, in contrast to the single pronged requirement of § 3(a) of the 1940 Act, quoted in 352 U.S. at page 601, footnote 6, 77 S.Ct. at page 547, it did not attempt to define the second prong. United States v. Hoellger, 2 Cir., 1960, 273 F.2d 760, rested on the ground that, because of the Government's abrogating the treaty with Germany under which Hoellger had claimed exemption and thereafter inducting him, presumably against his will, he was not "effectively relieved from service," 273 F.2d at page 762, or, in Judge Moore's words, at page 766, the Government "took away the consideration for the original bargain." Here the Government was willing to abide by the bargain; it was Cannon who no longer insisted on it. To be sure, there may be considerations that would favor, just as there are others that would oppose, rewarding a repentant alien with a renewal of his eligibility for citizenship. However, the words used by Congress went only so far as to say that mere application for exemption was no longer to debar him from citizenship unless followed by relief or discharge; and conditions in 1952 made it peculiarly unlikely that Congress would have given an alien an option to remain out of the armed forces so long as it suited him and then to regain opportunity for citizenship by subsequent change of mind.

I would affirm.