In re Petition for Naturalization of
Joseph KADICH.

No. 724822.

United States District Court
S. D. New York.
Aug. 12, 1963.

Edith Lowenstein, New York City, for petitioner.

Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, for respondent.

Howard I. Cohen, Designated Naturalization Examiner.

COOPER, District Judge.

Petitioner asks to be naturalized. The Government resists on the ground that he has forfeited his right thereto.

The United States Naturalization Examiner on June 3, 1963 concluded,

"I recommend, therefore, that this petition for naturalization be denied on the ground that the petitioner has failed to establish that he is not ineligible for citizenship by virtue of the provisions of Section 315 of the Immigration and Nationality Act of 1952 (8 U.S.C. 1426), having applied for and been relieved from military training and service because of alienage."

Petitioner, a painter of ecclesiastic murals, immigrated under the Italian quota (although listed as a national of Yugoslavia at the time) in 1924 and since then has resided in the United States.

The Selective Service System records disclose that petitioner was classified 1–H on September 19, 1941 as over age for military service. On February 15, 1942, he was classified IV–C as an alien. On April 16, 1942, he executed Form DSS 301, "Application By Alien for Relief from Military Service" and claimed Yugoslavian citizenship. Despite petitioner's protests that he did not comprehend the tremendous significance attached to that application, the entire record conclusively shows otherwise (Moser v. United States, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729, 1951). Clearly he seeks to evade the results which flow from the clean and unambiguous language in that application:

"I do hereby make application to be relieved from liability for training and service in the land or naval forces of the United States, under the Selective Training and Service Act of 1940, as amended, in accordance with the Act of Congress, approved December 20, 1941. *I understand that the making of this application to be relieved from such liability will debar me from becoming a citizen of the United States.*" (Emphasis supplied)

Form DSS 301, so executed by petitioner, was acted on by the local board of Selective Service the same day, April 16, 1942, and he was relieved from military service, classified IV–C. Further proc-

essing of Form DSS 301 executed by petitioner, however, resulted in overt action by National Headquarters of Selective Service: On May 10, 1943 they returned petitioner's "Application By Alien for Relief from Military Service" to his local board, with this directive:

"In view of the fact that Yugoslavia is a co-belligerent nation and has never been classified as a neutral, Application by Alien for Relief from Military Service (Form 301), was erroneously forwarded for this registrant.

"Registrant should be classified without regard to the claim for exemption and inducted, if he is otherwise qualified and not deferred."

Accordingly, as the Naturalization Examiner found, the local board "had erroneously placed petitioner in IV–C. The board thereupon reclassified petitioner 1–A and ordered him to report for induction." Such reclassification took place May 31, 1943. Petitioner was found acceptable by Headquarters Second Service Command, Governor's Island, New York, on June 25, 1943; on August 3, 1943, having been found "psychoneurosis, severe," petitioner was rejected and declared disqualified for military service at the Induction Station, and placed in class IV–F.

Petitioner seeks to extricate himself from the drastic legal consequences of Section 315, Immigration and Nationality Act of 1952 (8 U.S.C. § 1426), which provides:

"(a) Notwithstanding the provisions of section 405(b) of this Act, any alien who applies or has applied for exemption or discharge from training or service in the Armed Forces or in the National Security Training Corps of the United States on the grounds that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States.

"(b) The records of the Selective Service System or of the National Military Establishment shall be conclusive as to whether an alien was relieved or discharged from such liability for training or service because he was an alien."

He contends that his application for exemption and consequent relief from military duty in April, 1942 was a nullity by reason of the May 10, 1943 directive from National Headquarters; that the relief accorded him in April, 1942 was due only "neutral" aliens—a status then inapplicable to him, for either as a Yugoslav he was a national of a co-belligerent nation or as an Italian he was an "enemy alien."

Skender v. United States, 248 F. 2d 92, pp. 95, 96 (2d Cir., 1957), cert. denied 355 U.S. 931, 78 S.Ct. 411, 2 L.Ed. 2d 413, overrules petitioner's contentions:

"We hold that he 'was relieved * * * from * * * service' within the meaning of § 315(a) * * * and that the two-pronged condition of permanent ineligibility for citizenship was satisfied. *There is nothing in the language of that section to suggest that only those legally entitled to be relieved shall be debarred; it is the fact of relief, not the legal right to it, that is determinative of the second prong of the condition.* * * * But the bar of § 315(a) * * * applies to 'any alien' (as contrasted with a neutral alien) * * *. "* * * Section 315(a) did not leave it open to the appellant to attack the validity of the very classification which he sought on the ground that when made it gave him an exemption to which he was not entitled. * * *"" (Emphasis supplied)

Petitioner's lack of gratitude and indifference to the country that for all these years was for him a haven of refuge entitles him to little beyond a full and fair hearing. Not only did he seek exemption from military service in April, 1942, but on June 8, 1943 (after his re-

classification following the "erroneous" classification of April, 1942) in Form 304, Alien's Personal History and Statement, he put it clearly, "I do object to service in the land or naval forces of the United States."

Furthermore, at no time did petitioner attempt to withdraw his applications for exemption; he never sought induction into the "Services" ; he rendered no service whatever in the Armed Forces of the United States. We are not here confronted by extenuating circumstances which, in a search for relief from the exclusionary effects of Section 315(a), were present in United States v. Lacher, 299 F.2d 919 (9th Cir., 1962); Cannon v. United States, 288 F.2d 269 (2d Cir., 1961); In re Rego's Petition, 289 F.2d 174 (3rd Cir., 1961); United States v. Hoellger, 273 F.2d 760 (2d Cir., 1960); In the Matter of Cerati, 160 F.Supp. 531 (S.D.Cal.1957). And so it may well be said of this petitioner:

> "The facts of this case show that petitioner deliberately and consciously elected to take the step which shut the door to future citizenship." In the Matter of Cerati, supra, 160 F.Supp. p. 532.

Undeserving by his own standards, petitioner nevertheless is entitled under our legal system to the full majesty of the law.

> "Whatever one's personal views may be of his avoidance of service, such rights as the law accords him may not be denied simply because his conduct would readily be condemned by the many. Any diminution of his rights solely because his conduct did not find popular favor is a diminution of the integrity and the majesty of the law. Only in the exact and equal administration of the law can justice be done and public confidence in its administration maintained." Judge Weinfeld in In re Gourary's Petition, 148 F.Supp. 140, 144 (S.D.N.Y. 1957).

We are constrained, therefore, to inquire: When the local Selective Service board, following instructions from National Headquarters, corrected its "erroneous" classification of petitioner in April, 1942 and called him for induction in August, 1943, did it not *exclusively by its own action* recall the exemption it had accorded him? The exemption was first given, then taken away. The "two-pronged condition of permanent ineligibility for citizenship" (Skender, supra) was not really satisfied. It is clear that when he requested exemption and it was favorably acted upon in April, 1942, he became ineligible for naturalization. Equally clear, the record here reveals no affirmative act whatever on his part thereafter to alter that status. It was after April, 1942 that the Government informed petitioner that he was not entitled to the exemption it had allowed him, reclassified him accordingly and called him for induction. It took away what it had theretofore granted. Certainly the fact that when he reported for duty at the Induction Station and was rejected because found to be "psychoneurosis, severe", instead of placed on active duty, is not determinative here and is beside the point.

As a matter of law, then, the exemption allowed petitioner in April, 1942 did not truly constitute "effective" relief.

> "It seems more reasonable to conclude that when Congress used the words 'relieved * * * from * * * service' it meant *effectively* relieved." United States v. Hoellger, supra, 273 F.2d 762.

Judge Moore's reasoning in his concurring opinion in that case, 273 F.2d p. 766, is particularly pertinent:

> "However, the government's part of the bargain was that he be relieved from service. When the government by its own act destroyed Hoellger's exempt status by changing its arrangements with Germany, thereby making its nationals subject to service in our armed forces and thereafter compelled him to serve, it took away the consideration for the original bargain. Because the government deprived Hoellger of that which it represented to him

# 356

would be granted, it is in no position to insist on enforcement of citizenship ineligibility, the price he was paying for that which he did not receive."

■ As a matter of law, therefore, Kadich is not ineligible for naturalization under Section 315, Immigration and Nationality Act (U.S.C. § 1426). Petition granted.

So ordered.