In the Matter of Petition for Naturalization of Emilio FABBRI.

No. 285 369.

United States District Court
E. D. Michigan, S. D.

June 9, 1966.

Anthony P. Marchese, Robert A. Reuther, Detroit, Mich., for petitioner.

Andrew J. Belanger, Jr., Detroit, Mich., for Government (U. S. Department of Justice).

## OPINION

ROTH, District Judge.

Proceeding on petition of alien to be naturalized as a citizen.

Petitioner was born in Falciano, San Marino, on June 20, 1921, came to this country and resided here for three or four years (1926–30), returned to San Marino, and re-entered the United States again on April 14, 1940. Petitioner registered with the Selective Service Draft Board, and on two occasions executed objections to service in the United States Armed Forces (September 30, 1942, and November 22, 1942). He married an American citizen in 1947, with whom he is still living, together with their six children. He later filed his petition for naturalization (No. 222395); and after a hearing before this Court (the late United States District Judge Frank Picard), on motion of the Naturalization Service, an "Order Denying Petition for Citizenship" was entered on November 22, 1949. Notice of appeal from this order was filed, but the appeal was later dismissed by order approved by petitioner's attorney.

In 1951 petitioner was granted a re-entry permit, which he used for a trip to San Marino. He again applied for a re-entry permit in March of 1955. Process on this latter application was terminated when petitioner was informed that if he left the country he would not be re-admitted, presumably because of the denial of his petition for naturalization as "Ineligible, Section 3(a), Selective Training and Service Act."

Selective Service records indicate that petitioner was classified as I-A on two occasions, IV-C, IV-F, and IV-A on one occasion each. The chronological order of these is not clear from the records. The objections to service registered by the petitioner were obviously upon full understanding of the consequences. This conclusion is confirmed by the transcripts of the proceedings (page 16, "Continuation of Preliminary Examination on Petition for Naturalization, P–285369," and these proceedings, page 24), showing that petitioner did not then wish to become a citizen of this country and intended to go back to San Marino.

At the outset, the Court is confronted with the denial of petitioner's former application for citizenship. It is settled that naturalization proceedings before Courts are judicial proceedings, and that in passing upon the application, the Court exercises judicial judgment. Tutun v. United States, 270 U.S. 568, 46 S.Ct. 425, 79 L.Ed. 738. Petitioner cites

certain cases in support of his application which are distinguishable on their facts from those before us. The Mirzoeff Brothers' cases, 2 Cir., 253 F.2d 671, Id., D.C., 196 F.Supp. 230, are not on point, for neither was ever given the IV-C classification. United States v. Hoellger, 2 Cir., 273 F.2d 760; Cannon v. United States, 2 Cir., 288 F.2d 269; and In re Kauffman's Naturalization Case, 394 Pa. 625, 148 A.2d 925, are cases involving persons drafted into service. In In re Kadich, D.C., 221 F.Supp. 353, the board erroneously placed the petitioner in IV-C; and, following orders from the National Headquarters of Selective Service, he was placed in I-A, and later disqualified for service at the induction center as physically unfit and placed in IV-F.

United States v. Bazan, 97 U.S.App. D.C. 108, 228 F.2d 455, and In re Bergman, D.C., 173 F.Supp. 880, are two cases nearly on fours with the facts before us. In *Bazon* the applicant was admitted in 1941, filed an application for naturalization in 1942, and claimed exemption from service in November of 1942. He later tried to withdraw his application for exemption, but the draft board ruled that he could not do so. He filed an application for citizenship in 1946, which was denied because of his claim for exemption. His 1948 application for citizenship was before the Court; and the Court ruled that under the 1952 Act, it was required not only that the applicant applied for exemption from service, but also that he was relieved from serving for that reason. The District Court had ruled that *Bazan's* request for withdrawal of his exemption application operated to except him from the statutory bar to citizenship. While no claim was made that the 1946 denial of his application for citizenship was res judicata as to the pending petition, by inference the Circuit Court held that the current petition, even though filed before the effective date of the 1952 Act, was to be considered under said Act. The lower court ruling granting citizenship was upheld.

In In re Bergman, supra, the petitioner objected to service, but claimed that after he learned from a friend that any resident neutral alien who held a class IV-C exemption was precluded from citizenship, he contacted the draft board and requested that he be inducted into service. He was called for pre-induction examination and found physically unfit for service and placed in class IV-F. The Court denied the petition and said:

"Even assuming that this conduct constituted a withdrawal of his request for exemption, petitioner cannot void the legislative bar to citizenship. Congress made no provision for withdrawal of an election once made. Nor is the bar to citizenship removed by subsequent eligibility for service."

There is respectable authority for the proposition that the earlier denial of petitioner's application for citizenship by a judgment of this Court is conclusively binding upon the petitioner in this second application, and that, in effect, this proceeding constitutes a collateral attack on that judgment. In re Stasinopulos, 21 F.2d 71, E.D.Mich.; In re Samowich, D.C., 70 F.Supp. 273; Lakebo v. Carr, D.C., 111 F.2d 732; In re Regan, D.C., 244 F.Supp. 664. It seems to us, however, that the better reasoning is that of the following cases: Petition of Caputo, D.C., 118 F.Supp. 870; United States v. Hoellger, 2 Cir., 273 F.2d 760; United States v. Bazan, 97 U.S.App. D.C. 108, 228 F.2d 455; and In re Kadich, D.C., 221 F.Supp. 353. These cases follow the thinking in Ceballos v. Shaughnessy, 352 U.S. 599, 77 S.Ct. 545, 1 L.Ed.2d 583, that Section 315(a) (8 U.S.C. § 1426(a)) brought about a fundamental change in the law by substituting the "two-pronged" requirement, i. e. that the alien must not only have applied for exemption, but in addition, he must have been relieved from military service on "such ground." Prior to the 1952 Act, it was generally held that the mere application for exemption rendered an alien ineligible for citizenship. We hold that there is no judicial bar to en-

tertaining the present petition under the law as it now stands notwithstanding the denial of a previous petition under the then existing law. We pass, therefore, to the record before us.

Colonel Holmes, State Director of the Michigan Selective Service System, who had been with that agency since 1940, when questioned about the several classifications given applicant in the records still available, said that it was impossible to correlate dates and classes, but that based on his experience, the line through the notation "Filed Form #301. 9–30–42" could be taken to mean that that classification (IV-C) no longer applied. It appears further from the records that applicant's file was not retained as was the practice in IV-C cases. It is significant in this regard to note that the World War II files were destroyed in 1955, that is, some years after the 1949 naturalization hearing before United States District Judge Frank Picard on the previous application for citizenship.

We conclude that on this record the petitioner is not ineligible for citizenship as we do not find that he was "effective relieved" on the ground of claim of exemption. The record supports a finding that his IV-C classification was nullified and the alien examined for induction and classified IV-F and later IV-A; accordingly, the petition is granted.

As to the constitutional questions advanced on behalf of the petitioner, suffice it to say that citizenship by naturalization can only be acquired pursuant to the regulations and forms prescribed by Congress. See In re Dulo, D.C., 237 F.Supp. 46. See also United States Constitution, Article I, § 8 providing that Congress may bestow citizenship under a "Uniform Rule of Naturalization." That Congress has not done so is an untenable proposition.

The foregoing shall constitute the findings of fact and conclusions of law. An appropriate order granting the petition for naturalization may be submitted.