**Petition for Naturalization of Bolivar Milton VILLAMAR, Petitioner-Appellee,**

v.

**UNITED STATES of America, Respondent-Appellant.**

**No. 1031, Docket 80–6375.**

United States Court of Appeals, Second Circuit.

Argued April 3, 1981.

Decided June 2, 1981.

Esther Milsted, New York City, for petitioner-appellee.

Michael D. Patrick, Sp. Asst. U. S. Atty., New York City, (John S. Martin, Jr., U. S. Atty., S. D. N. Y., Thomas H. Belote, Sp. Asst. U. S. Atty., William J. Hibsher, Asst. U. S. Atty., New York City, of counsel), for respondent-appellant.

Before FEINBERG, Chief Judge, VAN GRAAFEILAND, Circuit Judge, and MALETZ, Judge, United States Court of International Trade.*

MALETZ, Judge:

The United States appeals from a decision of the United States District Court for the Southern District of New York, Inzer B. Wyatt, J., granting appellee's petition for naturalization because he was exempted from compulsory military service from October 7, 1943 to March 13, 1945, by virtue of his status as a neutral alien.

The facts are not in dispute. Appellee was born in Ecuador on August 22, 1909 and is a citizen of that country. He was admitted to the United States on September 24, 1929 and has been a lawful permanent resident since then. On July 17, 1941, appellee registered with the Selective Service System and due to his alienage was automatically classified as IV–C until November 10, 1942.[1] From November 10, 1942 until October 7, 1943, with the exception of a four month period during which he was classified as III–A,[2] appellee was classified I–A (available for military service).

On October 7, 1943, appellee applied for relief from military service on the ground that he was an alien. On that same day Selective Service determined that appellee was a citizen of a neutral country and reclassified him as IV–C (alien unavailable for military service).[3] Subsequently, on

---

* Judge of the United States Court of International Trade, sitting by designation.

1. Under the Selective Service System classifications existing at that time, Class IV–C encompassed "any registrant who is an alien ... and who has not on file with the Federal Immigration and Naturalization Service a valid declaration of intention to become a citizen of the United States." 32 C.F.R., 1940 Supp., § 603.-359.

2. At that time, Class III–A consisted of men "deferred by reason of dependency." 32 C.F.R., 1941 Supp., § 622.31.

3. In October 1943, Class IV–C included any citizen of a neutral country who, at any time prior to his induction into the armed forces,

March 13, 1945, appellee was reclassified I–A and ordered to report for induction since Ecuador was no longer a neutral country but rather a cobelligerent. His induction was postponed, however, and on June 5, 1945 he was deemed by Selective Service to be a person engaged in an activity in support of the national health, safety or interest and was classified as II–A.[4] On September 20, 1945, he was classified as IV–A (overage for service).[5]

On December 29, 1978, appellee filed a petition for naturalization in the District Court, which was granted on October 29, 1980 over the adverse recommendation of the naturalization examiner. This appeal followed.

We note at the outset that although appellee received his exemption as an alien pursuant to section 3(a) of the Selective Training and Service Act of 1940,[6] his eligibility for citizenship is to be determined in accordance with section 315(a) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1426(a),[7] which provides that

any alien who applies or has applied for exemption or discharge from training or service in the Armed Forces or in the National Security Training Corps of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States.

Section 315(a) contains

a two-pronged prerequisite for the loss of eligibility for United States citizenship. The alien must be one who "applies or has applied for exemption or discharge"

from military service and "is or was relieved or discharged" from that service. *Astrup v. Immigration and Naturalization Service*, 402 U.S. 509, 512–513, 91 S.Ct. 1583, 1585–1586, 29 L.Ed.2d 68 (1971).

In the present case, the District Court concluded that section 315(a) requires that an alien be completely and effectively relieved from military service in order to be barred from citizenship and that since appellee had not been so relieved, his citizenship was not precluded. Appellant disagrees and urges us to find that appellee was sufficiently relieved from service so as to make him ineligible for citizenship.

Thus, the sole issue here is whether appellee was "relieved" from military service within the meaning of section 315(a) so as to be barred from citizenship.

Facts quite similar to those present here were considered by this court in *United States v. Hoellger*, 273 F.2d 760 (2d Cir. 1960). That case concerned the naturalization petition of an alien who had been exempt from military service by virtue of a treaty between Germany and the United States. The treaty was abrogated whereupon the alien was reclassified I–A and inducted into the armed forces. In *Hoellger*, as here, the government relied on section 315(a) and argued that the alien was barred from citizenship because he had been partially relieved from military service. The court rejected this argument and concluded that when Congress used the words in section 315(a) "relieved . . . from . . . service" it meant *"effectively* relieved." 273 F.2d at 762. [Emphasis in original.] Thus, in *Hoellger*, a partial or temporary disqualification from compulsory military

---

filed with his local board "an Application by Alien for Relief from Military Service (Form 301)." 32 C.F.R., 1943 Supp., § 622.43(2).

4. See 32 C.F.R., 1945 Supp., § 622.21(b).

5. On August 31, 1945, the Selective Service regulations were amended to lower Class IV–A's overage category from 38 to 26, thus qualifying appellee for such reclassification. 32 C.F.R., 1945 Supp., § 622.41, Amdt. 337, effective August 31, 1945, 10 F.R. 11287.

6. 54 Stat. 885, as amended December 20, 1941, 55 Stat. 845, 56 Stat. 1019 § 3(a), 50 U.S.C.App. § 303(a) (1940 ed. Supp. II).

7. The Immigration and Nationality Act of 1952 became effective on December 24, 1952. Section 315(a) is applicable to persons such as appellee who applied for an exemption from military service prior to its effective date but who did not file a petition for naturalization until after that date. *Astrup v. Immigration and Naturalization Service*, 402 U.S. 509, 511–512, 91 S.Ct. 1583, 1584–1585, 29 L.Ed.2d 68 (1971).

service was found insufficient to establish a bar to citizenship.

The *Hoellger* court's analysis of section 315(a) was confirmed by the Supreme Court in *Astrup v. Immigration and Naturalization Service, supra.* At issue in *Astrup* was whether section 315(a) mandated denial of citizenship to an alien who had been exempted from military service by virtue of his alienage but later lost his exemption when Congress repealed the statutory provision under which he was exempted. The court held that the alien's temporary relief from military service did not debar him from citizenship, stating (402 U.S. at 513–4, 91 S.Ct. at 1585–6):

> We think that Congress used the words "is or was relieved" [in section 315(a)] to provide that an alien who requests exemption from the military service be held to his agreement to relinquish all claims to naturalized citizenship *only* when the Government abides by its part of the agreement and completely exempts him from service in our armed forces. [Emphasis in original.]

*Astrup* also established that an alien who loses his IV–C classification but is not actually inducted into military service because of intervening circumstances is nevertheless eligible for citizenship. Specifically rejecting any requirement of actual service, the Court observed (402 U.S. at 513, 91 S.Ct. at 1585):

> Other courts have distinguished the *Hoellger* holding from the situation where an alien is once relieved from military service but later reclassified for service which he never performs because of intervening circumstances such as physical unfitness. See *Lapenieks v. Immigration and Naturalization Service,* 389 F.2d 343 (1968); *United States v. Hoellger, supra,* at 762 n. 2. However, there is nothing in the language of § 315 which leads us to believe that Congress intended such harsh and bizarre consequences to flow from an individual's failure to pass a physical examination.

The decisions in *Astrup* and *Hoellger* strongly support the District Court's conclu-sion in the present case that appellee was not completely relieved from military service and is therefore eligible for citizenship. Appellant stresses, however, that here—unlike the situation in *Astrup* and *Hoellger* —the loss of appellee's military exemption was caused not by affirmative government conduct, but rather by Ecuador's termination of its neutral status in 1945. This fact, and this fact alone, appellant emphasizes, distinguishes this case from *Astrup* where Congress affirmatively repealed the statutory basis of the alien's exemption and from *Hoellger* where the United States affirmatively abrogated the treaty providing for the alien's exemption. In effect, appellant asks us to hold that *Astrup*'s requirement that an alien be permanently exempted from military service before he is barred from citizenship is applicable only if the government affirmatively terminates the alien's exemption and thereby breaks its agreement. Appellee's relief from service for as long as he was a neutral alien, the argument proceeds, constituted complete relief as required by *Astrup* and therefore kept the government's part of the bargain.

█ We cannot agree. As we view the agreement embodied in section 315(a), the government's part of the bargain is a per-manent exemption of appellee from com-pulsory service—as opposed to an exemp-tion for only so long as he remained a neutral alien. Stated otherwise, we do not believe that appellee's relief from service for merely as long as he was a neutral alien suffices to establish the *complete* relief re-quired by *Astrup* and *Hoellger.* Relevant is *Petition of Caputo,* 118 F.Supp. 870 (E.D.N.Y.1954), where an enemy alien who was a citizen of Italy lost his exemption from service upon the end of this country's war with Italy and was reclassified I–A. The court held that the alien was not barred from naturalization since he "was not ... relieved [from service] but was classified ... [I–A], and his permanent ineligibility to citizenship therefore has not been dem-onstrated." 118 F.Supp. at 872. The same result was reached in *In Re Kadich,* 221 F.Supp. 353 (S.D.N.Y.1963), where an alien

lost his IV–C classification upon Selective Service's determination that his native country Yugoslavia was a cobelligerent nation. The court held (*id.* at 355) that the alien was not debarred from citizenship because:

> The exemption was first given, then taken away. The two-pronged condition of permanent ineligibility for citizenship was not really satisfied.

We recognize that the Fifth and Ninth Circuits have held that the government's part of the bargain under section 315(a) is satisfied by an exemption lasting for merely so long as the alien's country remains neutral. See *Assi v. United States*, 498 F.2d 1064 (5th Cir. 1974) and *Colombo v. United States*, 531 F.2d 943 (9th Cir. 1975). However, in our view those cases are not consistent with *Astrup*. For the result we reach here comports with *Astrup*'s admonition that "*temporary* release from military service is not by itself sufficient to debar an alien from a later claim to naturalized citizenship", 402 U.S. at 513, 91 S.Ct. at 1585 [emphasis in original], and with Judge Moore's concurring opinion in *Hoellger* that the government's half of the bargain is not satisfied by "a mere temporary stay or deferment subject to cancellation." 273 F.2d at 766.

■ Nor do we find it compelling that appellee, in order to obtain his IV–C classification, completed Selective Service Form 301, in which he acknowledged that by making that application he would be permanently disqualified from citizenship. There is nothing in that Form indicating that the exemption from service was less than permanent. Thus, even if Form 301 is read as embodying a bargain between appellee and the government, it would be entirely unfair to read into the agreement a basic limitation or condition that is absent from the document itself.

■ We are also unable to agree with appellant's argument that the outcome here should turn on the presence or absence of affirmative government conduct terminating appellee's exemption. Even if it were required, the affirmative conduct appellant

believes necessary is present here since, in reality, the question of whether Ecuador was a neutral or a cobelligerent from the point of view of the United States was an issue that necessarily must have been resolved by the executive branch of the United States government. See *United States v. Bussoz*, 218 F.2d 683, 686 (9th Cir. 1955). By making this determination as to Ecuador's status, the government affirmatively ended appellee's exemption.

While affirmative government conduct ending appellee's exemption is present here, we do not think that such conduct must be shown if an alien is to be eligible for citizenship under section 315(a). Instructive is *Cannon v. United States*, 288 F.2d 269 (2d Cir. 1961), where an alien initially classified IV–C was subsequently reclassified I–A and inducted into the military. In that case, the event which made the reclassification of the alien possible was not an affirmative government act, such as the repeal of a statute or the abrogation of a treaty, but rather the alien's own withdrawal of his request for an exemption. Nonetheless, this court held that the alien had not been fully relieved from service and was therefore eligible for citizenship. In view of *Astrup*'s holding that an alien "reclassified for service which he never performs because of intervening circumstances" is not barred from citizenship, 402 U.S. at 513, 91 S.Ct. at 1585, it is of no consequence that unlike the alien in *Cannon*, appellee was not inducted into the service. Further, although appellee did not actually serve in the armed forces, appellee's classification, after March 13, 1945, as I–A, and later II–A, obviously did not relieve him from service "on the ground that he is an alien", as required by section 315(a). See *Lapenieks v. Immigration and Naturalization Service*, 389 F.2d 343, 347 (9th Cir. 1968) (Duniway, J., dissenting); *In Re Wendt*, 300 F.Supp. 725, 727 (N.D.Ill.1969).

There are additional considerations which militate against appellant's argument that affirmative government conduct must be shown. For one thing, neither the language of section 315(a) nor its legislative

history indicate that affirmative government conduct must be present. See S.Rep.No. 1137, 82d Cong., 2d Sess. 45 (1952); H.R.Rep.No. 1365, 82d Cong., 2d Sess. 81 (1952). Moreover, such a requirement would separate those eligible for citizenship from those ineligible, not on the basis of differences in their Selective Service records, but on the basis of vagaries in diplomatic history involving such considerations as whether it was the United States or the alien's nation which abrogated a treaty providing for the alien's exemption from military service. Adopting this approach would make eligibility for citizenship of aliens with identical Selective Service records depend on mere happenstance. Not only would such an outcome fail to serve any Congressional purpose underlying section 315(a), it would be contrary to the principle that persons similarly situated should not needlessly be treated differently. *McLaughlin v. Florida*, 379 U.S. 184, 190–191, 85 S.Ct. 283, 287–288, 13 L.Ed.2d 222 (1964); *Atchison, T. & S.F.R. Co. v. Mathews*, 174 U.S. 96, 104–105, 19 S.Ct. 609, 612–613, 43 L.Ed. 909 (1899); *Gulf, C. & S.F.R. Co. v. Ellis*, 165 U.S. 150, 155, 17 S.Ct. 255, 256, 41 L.Ed. 666 (1897). What the court said in *Matter of Rego*, 289 F.2d 174, 176 (3d Cir. 1961), bears repetition here:

> [T]he deprivation of the privilege of acquiring citizenship, which an alien in permanent residence normally enjoys, is a substantial penalty. A statute which attaches such a penalty to certain conduct should be construed strictly to avoid an imposition which goes beyond the manifest intent of Congress.... Certainly such a statute should not be given an unnecessarily broad construction in order to make it apply to circumstances not plainly covered.

The judgment below is affirmed.

VAN GRAAFEILAND, Circuit Judge (dissenting):

I am troubled by my colleagues' apparent eagerness to award the perquisites of citizenship to those who fought during World War II, not to defend the United States, but to avoid doing so. I do not believe that the law mandates this result.

Section 2 of the Selective Training and Service Act of 1940, as amended in 1941, provided that every male citizen and resident of the United States between eighteen and sixty-five had to register for service. 55 Stat. 844. Section 3, as amended, provided that any citizen or subject of a neutral country, could, upon application, be relieved from liability for training and service. 55 Stat. 845. When these sections are read together, as they must be, it is quite apparent that an exempted alien whose homeland abandoned its neutral status would lose perforce his service exemption. Like any other nonexempt male resident, he would then become subject to registration.[1]

This was the law when appellee relinquished his future claims to citizenship. The Government could not agree to exempt appellee completely and permanently from service, regardless of his homeland's change of status, without undertaking to violate the law and to give appellee a possible unconstitutional preference. I do not believe that, when Congress enacted section 315(a) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1426(a), it intended to bind the Government *nunc pro tunc* to agreements that would have been illicit when made. In short, I believe that appellee got exactly what he bargained for.

Ecuador declared war on Germany and Japan in February, 1945. Michel, *The Second World War* 452 (1968); 4 *Chamber's Encyclopaedia* 782 (1973). The majority's contention that by recognizing this obvious loss of neutrality, the United States Government "affirmatively ended appellee's exemption" demonstrates more ingenuity than is warranted by the merits of appellee's claimed right to citizenship. I believe that *Colombo v. United States*, 531 F.2d 943 (9th Cir. 1975) and *Assi v. United States*,

---

1. As Judge Maletz has wisely stated, "persons similarly situated should not needlessly be treated differently."

498 F.2d 1064 (5th Cir. 1974) were correctly decided.  I would reverse.