# 338

Helga CARLEN, John T. Carlen, Cathryn McKay, Arthur R. McKay, Arthur R. and Cathryn McKay and John T. and Helga Carlen, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 14090.

United States Court of Appeals, Ninth Circuit.

March 14, 1955.

Charles F. Osborn, Seattle, Wash., Lester T. Parker, Aberdeen, Wash., for petitioners.

H. Brian Holland, Asst. Atty. Gen., Karl Schmeidler, Ellis N. Slack, Hilbert P. Zarky, Meyer Rothwacks, Sp. Assts. to Atty. Gen., Kenneth W. Gemmill, Acting Chief Counsel, I. R. S., Washington, D. C., for respondent.

Before BONE and CHAMBERS, Circuit Judges and CLARK, District Judge.

BONE, Circuit Judge.

This case comes to us for review of a decision of the Tax Court.[1] The income taxes here involved are for the tax years 1947, 1948, 1949 and 1950.

Reference should be had to the opinion and findings of the Tax Court which fully outline the pertinent and basic facts in the instant case and provide a clear picture of the problem before this Court. The parties stipulated (among other matters) to certain facts which were also found by the Tax Court and included in its findings by reference thereto. In this stipulation of facts the parties agreed that the *single issue* presented (in all of the series of six cases) is the right of the taxpayers to the benefit of section 117(k) of the Internal Revenue Code, 26 U.S.C.A. § 117(k), in computing the income of the partnership of McKay and Carlen, and in computing the tax liability of these partners for each of the years herein involved. It was also stipulated that section 117(k) (1) and (2) of the Internal Revenue Code is the controlling section here involved and that the applicable regulations are Regulations 111, Section 29.117–8; also that the taxpay-

---

1. Reported at 20 T.C. 573. Six separate but closely related tax cases were docketed in the Tax Court and there consolidated for trial. These six cases presented common questions which, when determined, will decide all of these cases. For this reason the parties stipulated in this court that the pleadings in the instant case concerning John T. and Helga Carlen (husband and wife) shall alone be printed as part of the printed transcript and that the pleadings in the five companion cases be considered as part of the printed record, and that the parties may refer to the pleadings in their respective briefs and oral argument.

The Tax Court points out in its Opinion that the question before it was one of first impression and that no decided cases were available to serve as guide posts.

ers elected in their respective income tax returns and in the partnership income tax returns for the years involved to report their gain *on the sale of timber* under section 117(k).

From the Findings of Fact of the Tax Court it appears that on March 15, 1945, Rayonier Incorporated and Neuskah Timber Company [2] entered into a contract by the terms of which Neuskah purchased from Rayonier all of the merchantable cedar and spruce timber and certain hemlock located on tracts described in the contract and owned by Rayonier.

On April 23, 1945, Neuskah entered into a contract with the McKay and Carlen partnership for cutting part of the spruce and cedar included in the Rayonier-Neuskah contract. This contract is set out in extenso in the Findings of Fact of the Tax Court.

On November 1, 1946, August 15, 1948, and October 25, 1948, Rayonier and E. K. Bishop Lumber Company entered into additional contracts similar in material respects to the contract between Neuskah and Rayonier. At the time these additional contracts were entered into E. K. Bishop Lumber Company immediately entered into an agreement with McKay and Carlen for the logging of the areas described in the contracts between Rayonier and Bishop. (See footnote 2.) The agreements with McKay and Carlen were oral and contemplated terms and conditions similar to those stated in the contract of April 23, 1945, between Neuskah and McKay and Carlen.

The Tax Court found that in 1945 appellants Arthur R. McKay and John T. Carlen formed an oral general partnership to engage in the logging and cutting of timber in Southwest Washington. During the period here involved this partnership was engaged in the trade or business of logging timber and was not engaged in the business of cutting timber for sale on its own account or for use in its business.

On this appeal appellee (Commissioner) poses the issue as follows:

"Whether the Tax Court correctly held that amounts received by the taxpayers under certain contracts for the cutting of timber constituted ordinary income and were not long-term capital gains within the meaning of Section 117(k) (1) of the Internal Revenue Code, where the taxpayers had no proprietary interest in the cut timber, no right to sell it or to use it in their own business, and where the amounts *were received merely as compensation* for services rendered." (Emphasis ours.)

Appellants state the controlling issue to be:

"Were appellants engaged in logging *under a service contract* or were they logging *and selling timber for their own account* [and] are the appellants entitled to report their gains realized on the sale of timber as capital gains under Section 117(k) (1) of the Internal Revenue Code?" (Emphasis ours.)

We are in agreement with the fuller statement of the controlling issue before the Tax Court which is stated in Judge Tietjens' opinion as follows:

"The issue for decision is whether the taxpayers may properly treat the cutting of timber under the contracts between the partnership and Neuskah and E. K. Bishop Lumber Company 'as a sale or exchange of such timber' as provided in section 117(k) (1). See also section 117(j) (1). If so, they were entitled to treat their gains as capital gains.

"In summary, the taxpayers' argument is that they are entitled to the benefits of 117(k) (1) 'either

---

2. Neuskah was a subsidiary of E. K. Bishop Lumber Company. On January 31, 1946, Neuskah assigned its contract with Rayonier to E. K. Bishop Lumber Company and thereafter McKay and Carlen dealt with this assignee with regard to the contract. The assignment was approved by Rayonier.

on the basis that [they] *purchased the timber and were the owners thereof at all times* (subject to the reservation of title for security purposes) or had a contract right to cut such timber and to sell the timber or logs in the normal course of taxpayers' business.

"The Commissioner's position is that the contracts involved *were essentially to perform services for compensation* and that the partnership did not acquire any interest in the standing timber or the logs as cut which would entitle it to capital gains treatment under the subsection in question." (Emphasis ours.)

In our view the Commissioner correctly states, (in summarizing his arguments in his brief) the heart of the problem posed in the instant review proceeding.

"The taxpayers, who received funds by virtue of their execution of a contract to cut certain timber were, nevertheless, as the Tax Court held, not entitled to the capital gains benefits afforded by Section 117(j) (1) and (k) (1) of the Internal Revenue Code. *They were not owners of the timber either before or after cutting, and had no right to sell it or to use it in their own trade or business.* There was no compliance, therefore, with the conditions of Section 117(k) (1). Upon examination of all the facts, including the contracts entered into, the Tax Court found that the taxpayers had in essence merely obligated themselves *to render services* for which they were entitled to compensation based on a fixed formula, and that the amounts *received constituted ordinary income.*" (Emphasis ours.)

The foregoing argument of the Commissioner finds approval in the decision of the Tax Court. It summarizes its views at page 578, of 20 T.C. of its reported opinion in the following language:

"We conclude that the essence of the arrangement was that the partnership was employed to cut timber on lands of another for compensation determined on the basis of market price of the logs and that the partnership did not own or have any proprietary interest in the timber, either before or after cutting. The statute speaks of the cutting of timber for sale by a taxpayer who has a right to cut such timber. To us this means that the taxpayer who would claim the benefit of the statute must be the one who has not only the right to cut but also the right to sell on his own account. The taxpayers here were not such persons. We agree with the Commissioner that the statutory language does not cover a taxpayer who cuts timber in which he himself has no proprietary interest which he can dispose of by sale.

"Neither, in our opinion, can the petitioners qualify as taxpayers cutting the timber 'for use in the taxpayer's trade or business' as required by the statute. They were loggers and were cutting timber which belonged to others and was to be used by others. The taxpayers themselves did not use the timber and they had no control over it except to cut and deliver it according to the terms of their cutting contracts with Neuskah and E. K. Bishop."

Upon a careful consideration of the decision of Judge Tietjens we find no logical reason for disagreeing with the conclusions he there expressed.[3] The court's findings of fact and general conclusions thereon reach into every area of the case material to a proper disposition of the controlling issues posed at trial.

Since we conclude that the facts adduced at trial adequately support the decision of the Tax Court its judgment is affirmed.

---

**3.** The decision of Judge Tietjens was reviewed by the Tax Court.