In re Petition for Naturalization of Werner Alfred THANNER.

No. 20761.

United States District Court District of Colorado.

Jan. 20, 1966.

William D. Goodbar, Colorado Springs, Colo., for petitioner.

Arnie R. Brassart, Designated Naturalization Examiner, Denver, Colo., for the Immigration and Naturalization Service

of the Justice Department of the United States.

ARRAJ, Chief Judge.

This matter is before the Court on the petition of Werner Alfred Thanner for naturalization to citizenship of the United States. After a full hearing before the Designated Naturalization Examiner, at which time the petitioner was represented by competent counsel, appropriate findings of fact and conclusions of law were entered pursuant to Title 8 U.S.C. § 1446. The examiner recommended that the petition be denied. A further hearing was had before this Court on this recommendation; the examiner appeared in person and the petitioner appeared in person and by his attorney. The Court has fully considered the findings and conclusions of the examiner, the exhibits received in evidence, the testimony of the petitioner and arguments of counsel, and, upon further independent research of the relevant authorities, is now fully advised in the premises.

The petitioner, a national of Switzerland, 34 years of age, was lawfully admitted into the United States as a permanent resident on April 7, 1954. In due course, he registered with Local Board No. 21, Chicago, Illinois, under the Selective Service Act, receiving a classification of I–A which meant that he was available for immediate induction. Subsequently, on October 6, 1954, the petitioner married Alice Thanner, also a Swiss national who arrived in this country a few days prior to their marriage. Petitioner was physically examined at the Chicago Armed Forces Examining Station on December 22, 1954 and was found to be fully acceptable for military service under the standards of acceptability which were in effect at that time. On or about January 21, 1955, the petitioner elected to claim the exemption from compulsory military service provided by Selective Service Reg. 1622.42 promulgated pursuant to Title 50 U.S.C. App. § 454(a). The substance of that exemption provision is that any male alien in a status other than a permanent resident may claim exemption from compulsory military service in the armed forces of the United States but, in so electing, he forfeits any privilege that he may otherwise have of later attaining citizenship. It is indisputably clear that the petitioner was fully aware of the legal effects of his claim for exemption vis-a-vis any later claim to citizenship that he might choose to make. A portion of his signed request for the exemption states

I have full knowledge of the provisions of Section 315 of the Immigration and Nationality Act, which provides in pertinent part that—

"* * * any alien who applies or has applied for exemption * * * from training or service in the Armed Forces * * * of the United States on the ground that he is an alien, and is or was relieved * * * from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States * * *"

The Selective Service System granted the petitioner's request and, on February 17, 1955, he was classified IV–C, the alien exemption classification. After a period of about sixty days, he was reclassified V–A; that classification being for those over the age limit for compulsory military service. The record does not disclose the reasons prompting such reclassification; however it is noted that the IV–C exemption protected the petitioner from compulsory military service over a critical period of sixty days until such time as other provisions of the Selective Service Act would come into effect to afford him continued protection from the draft.

This petition for naturalization was filed on September 9, 1964 pursuant to Section 319(a) of the Immigration and Nationality Act, Title 8 U.S.C. § 1430 (a). Denial was recommended by the department "* * * on the ground that the petitioner had failed to establish that he is not ineligible for naturalization by virtue of Section 315 of the Immigration

and Nationality Act, Title 8 U.S.C. § 1426."

■ The petitioner contends that this provision is inapplicable to this case for two reasons. One is that because of his domestic circumstances, his request for the exemption was not freely and voluntarily made; he asserts that his wife threatened to return to Switzerland if he entered military service. In response to this assertion, we find that the record before us clearly dispels any doubt that his request was anything other than freely and voluntarily made. Assuming that petitioner's wife would carry out her threat to return to Switzerland should the petitioner be inducted into military service, the record fully supports the conclusion that the petitioner was not in any major way influenced by this threat; certainly those threats did not amount to a degree of compulsion that would render his request null and void for lack of sufficient mental stability to make an intelligent choice.

■ The most reasonable and logical reason for his claiming the exemption appears in his own handwritten statement made to the examiner on July 21, 1964 (Exhibit 1B to Examiner's Findings) wherein petitioner states:

" * * * Since in January 1955 when I made the application for exemption I did not intend to stay in the United States therefore I did not care about the portion of the application for exemption which stated that "I would not apply for citizenship." The application stated that I could not apply for citizenship if I claimed the exemption. I understood that I could not apply for citizenship if I claimed the exemption. I really did not care at that time."

In this respect, the Court has carefully studied the opinion of Judge Doyle in Petition for Naturalization of Koplin, 204 F.Supp. 33 (D.Colo.1962). There, in reaching an ultimate result contrary to that reached in the case at bar, Judge Doyle pointed out, " * * * petitioner executed the claim under a misapprehen-

sion as to its meaning and consequence * * *." Id. at 37. That is not the situation presented by the facts of this case for the record amply supports a finding that the petitioner here was fully cognizant of the legal effects of his choice. The other reason for the inapplicability of Section 315 asserted by the petitioner, and upon which he places primary reliance, presents a more complex question and requires an extended discussion.

The substance of his argument is that the IV–C classification was a legal nullity and hence not a bar to naturalization under Section 315. In arriving at this conclusion, he contends that Section 454 (a) of the Universal Military Training and Service Act establishes a statutory distinction between aliens holding the status of temporary residents and those aliens admitted to this country as permanent residents. He then asserts that *only* temporary resident aliens were entitled to the alien exemption and that permanent resident aliens were not so entitled, but were to be treated in all respects as citizens in matters concerning compulsory military service. Thus, he claims, the immunity he enjoyed under the IV–C classification was without legal validity, and, furthermore, that he was legally subject to induction at all times during the period of unauthorized protection. Hence, he concludes, the exemption being a legal nullity, he was never at any time " * * * relieved * * *" from such training and service on the " * * * ground that he [was] an alien * * *" within the meaning of Section 315 so as to enable that Section to debar him from naturalization and citizenship.

■■ The Constitution of the United States, in Article I, Section 8, cl. 3, entrusts to the Congress the authority to establish a uniform rule of naturalization. Congress, from the beginning of this country's history to the present time has responded to this authority, and the predominant principle pervading all of the Congressional pronouncements pertaining to naturalization is that the

status of citizenship of the United States is a privilege; and, being a privilege, the Congress is free to attach any preconditions to its attainment that it deems fit and proper. Likewise, the Congress is equally free to grant certain benefits to aliens with the condition that acceptance of such will render the recipient permanently ineligible to later seek naturalization.

Section 315 is a clear example of a law enacted pursuant to this Congressional authority. Congress, undoubtedly persuaded by the necessity of good relations with various foreign nations, grants to nationals of those nations residing in this country immunity from compulsory service in the military forces of the United States. But this benefit is not without its price and that price is the permanent ineligibility of such aliens for citizenship. Such is the manifest policy of the Congress; those who consider this to be a harsh or unfair bargain must seek their redress from Congress and not the Federal Courts; it is our duty to enforce that policy—not to override it.

Section 315 has two specific prerequisites to its applicability to situations of this nature. Not only must an alien seek an exemption from military service, he must also be, in fact, relieved from such service by virtue of the alien exemption. Ceballos v. Shaughnessy, 352 U.S. 599, 77 S.Ct. 545, 1 L.Ed.2d 583 (1957). It is the meaning and interpretation of his second prerequisite that is dispositive of the present controversy.

The Courts of Appeal have expressed differing views concerning this question of relief from compulsory military service. The Third Circuit, in In Re Rego's Petition, 289 F.2d 174 (1961), has adopted what may be classified as a "technical" analysis. It is this position that the petitioner urges this Court to accept. Under the *Rego* analysis, the immunity accorded to the alien must be legally valid. Relying on the statutory distinction between temporary and permanent resident aliens, the Court stated

* * * the important feature of this section is the distinction made between aliens admitted for "permanent residence" and aliens who remained in the United States in a status other than that of a permanent resident. Permanent resident aliens were treated like citizens in that they had the same unqualified obligation to render military service as did citizens. *Only aliens not in permanent residence were privileged to be relieved of military service if they so requested.* Id. at 176–177 (Emphasis supplied)

The Court there held that since the petitioner in *Rego*, like the petitioner here, was a permanent resident alien, the IV-C exemption granted to him was a legal nullity thereby precluding Section 315 from becoming operative to bar his naturalization to citizenship.

The Second Circuit subscribes to what may be denominated as the "practical" analysis. United States v. Hoellger, 273 F.2d 760 (1960). Under this theory, the alien who seeks immunity from compulsory military service must, in fact, receive "effective" relief. This effective relief is not received when, subsequent to the IV-C classification, the alien is reclassified and involuntarily inducted into the military service. Cannon v. United States, 288 F.2d 269 (2d Cir. 1961) establishes the principle that the bar of Section 315 can be lifted by the alien foregoing his alien exemption and actually being involuntarily inducted into the armed forces.

The withdrawal of the application for exemption did not reinstate [the petitioner's] right to apply for citizenship. Not until his service in the armed forces was this right reinstated. Not inducting [the petitioner] would have effectively relieved him from military service, and he would have been forever barred from citizenship. By compelling him to serve at a time chosen by the Local Board he was no longer relieved from service and thereby by this compulsion the Local Board re-

turned to him his opportunity of applying for naturalization. Id. at 271.

Thus, by serving involuntarily at a time convenient to the Selective Service, the formerly exempt alien can raise the bar of Section 315. The determinative factor is that the alien actually serves this country by being involuntarily inducted into the armed forces at a time chosen by and convenient to the Selective Service. On the other hand, the relief is effective when, although a legal nullity, it operates, as did this petitioner's IV–C classification, in a *de facto* manner to afford immunity from compulsory military service. In re Velasquez's Petition, 139 F.Supp. 790 (S.D.N.Y.1956). As pointed out by the Court, in In re Skender's Petition, 248 F.2d 92 (2d Cir. 1957).

> There is nothing in the language of that section to suggest that only those legally entitled to be relieved shall be debarred: *it is the fact of relief, not the legal right to it, that is determinative.* Id. at 95 (Emphasis supplied)

See also Ungo v. Beechie, 311 F.2d 905 (9th Cir. 1963); United States ex rel. Rosio v. Shaughnessy, 134 F.Supp. 217 (S.D.N.Y.1954); Schenkel v. Landon, 133 F.Supp. 305 (D.C.Mass.1955).

Faced with a conflict of authority concerning this question, we must choose between the variant views. In making this choice, our prime concern is that of enforcing the legislative policy delineated by the Congress for this important area of the law. Thus motivated, and with due deference to the views expressed by the Third Circuit, this Court nevertheless concludes that the "practical" analysis adopted by the Second Circuit is the better view and is more consonant with the legislative policy established by the Congress.

An examination of the facts of the case at bar shows that the petitioner was effectively relieved from compulsory military service for a period of sixty days until a reclassification afforded him continued immunity from the draft. The fact that this relief was not legally valid is not a distinction impressive to this Court. What is impressive is the unalterable and crucial fact that the petitioner was relieved from military service; and such relief was effectuated at his own voluntary request, deliberately and knowingly made, and with the full understanding that he would not thereafter be eligible for United States citizenship.

> After all, if debarment from citizenship is deemed a just fate for an alien who sought and was accorded an exemption to which he was entitled, it is not unduly harsh for one who, " * * * was accorded an exemption to which he was not entitled. Section 315(a) did not leave it open to the appellant to attack the validity of the very classification which he sought on the ground that when made it gave him an exemption to which he was not entitled." In re Skender's Petition, supra, 248 F.2d at 95–96.

Furthermore, *Rego, supra*, is clearly distinguishable from the case at bar. There, the petitioner was reclassified and was involuntarily inducted into the military service. Here, the petitioner has never served in the armed forces of this country.

In summary, the record reveals that the petitioner, desirous of remaining out of the armed forces, secured an immunity therefrom that may have been technically defective but was practically effective. It is the conclusion of this Court that the relief he received was sufficiently effective to bring the petitioner within the purview of Section 315 of the Immigration and Nationality Act. Accordingly, the petition for naturalization must be, and hereby is, denied.

This memorandum will serve as the Court's findings of fact and conclusions of law pursuant to Rule 52(a).