MATTER OF MINCHEFF

In Exclusion Proceedings

A–12343764

*Decided by Board September 17, 1970 and June 22, 1971*

Where applicant, a native and citizen of Argentina, who was admitted for permanent residence in 1961; who registered with the Selective Service and was classified 1–A in 1965; and who in January 1967 requested exemption from U.S. military service under the treaty with Argentina, following which the Selective Service System (mistakenly concluding that under the 1951 amendment to the Selective Service laws it was powerless to grant a permanent resident complete exemption) cancelled the induction order, again classified him 1–A (in which classification he has remained), and indefinitely postponed further processing of his case, he was not effectively relieved from military service within the meaning of section 315(a) of the Immigration and Nationality Act so as to become ineligible to citizenship thereunder; hence, he was not inadmissible under section 212(a)(22) of the Act upon his return to this country from a brief trip abroad in 1967. While the right of a treaty alien to claim and obtain effective relief from military service may now be regarded as settled (Opinion of the Attorney General, 42 Op. Atty. Gen. 28 (1968); endorsed in *Itzcovitz* v. *Selective Service Local Board No. 6*, 301 F. Supp. 168 (S.D. N.Y., 1969), appeal dismissed as moot, 422 F.2d 828 (C.A. 2, 1970)), this was not the case at the time applicant applied for relief and obtained indefinite postponement of his induction in early 1967.

EXCLUDABLE: Act of 1952—Section 212(a)(22) [8 U.S.C. 1182(a)(22)]—
Alien ineligible to citizenship.

ON BEHALF OF APPLICANT:
Eric L. Keisman, Esquire
277 Park Avenue
New York, New York 10017
(Brief filed)

Jack Wasserman, Esquire
Warner Building
Washington, D.C. 20004

ON BEHALF OF SERVICE:
Solomon Isenstein
Acting General Counsel

Irving A. Appleman
Appellate Trial Attorney

John P. Ruggiero
Trial Attorney
(Brief filed)

## BEFORE THE BOARD
(September 17, 1970)

This is a Service appeal from an order of a special inquiry officer admitting the applicant to the United States as a returning resident alien. The special inquiry officer concluded that the applicant had not been effectively "relieved" from service in our armed forces within the meaning of section 315(a) of the Immigration and Nationality Act and was, therefore, not inadmissible under section 212(a)(22) of that Act as an alien ineligible to citizenship. We concur in that conclusion and dismiss the appeal.

The facts are not in substantial dispute. The applicant is a 24 year old male alien, a native and citizen of Argentina, who is married to a permanent resident of the United States. He first entered the United States on September 17, 1961, when he was admitted as an immigrant. On attaining the age of 18 he registered under the Selective Service laws with his local draft board. On March 17, 1965 he was classified 1-A, the classification given a registrant who is immediately available for induction. He passed his pre-induction physical examination and on January 10, 1966 he was ordered to report on January 25, 1966 for induction into our armed forces.

As previously instructed by the Argentine consul in New York City, the applicant brought his induction order in to the consul. The latter sent it to the Argentine Embassy, which arranged through the State Department to invoke in the applicant's behalf of the exemption provisions of our treaty with Argentina. On January 21, 1966, the applicant was notified by his draft board that his induction was postponed until further notice. Later that year, he was notified by the Argentine consul that he had been called up for service in the Argentine army and he was directed to report in Argentina for induction on March 2, 1967.

In the meantime, because of a change in our Selective Service System procedures, the applicant was notified that he must submit a written request if he wished continued postponement of his induction into our armed forces. In a letter dated November 16, 1966, his draft board told him, among other things:

We have now been advised by the Director of Selective Service that in order for administrative action to be taken to continued [sic] the *postponement* of your induction, it will be necessary for you to sign the attached request, in duplicate, for relief from military service on the basis of your alien status . . . If you decline to sign such statement, or if these forms are not received within thirty days, your *postponement* will be terminated, and you will be directed to report for induction under your outstanding Order to Report for Induction. [Emphasis supplied]

If you request exemption by signing the attached forms, the Director of Selective Service has requested the Local Board to reopen your classification and classify you anew, and if you are again classified 1A *subsequent processing in your case will be held in abeyance until further notice* [Emphasis supplied].

Enclosed was the formal exemption request.

Having failed to submit the required written request, the applicant was ordered to report for induction on January 16, 1967. He reported as directed, explained his dilemma concerning the Argentine draft call, and was told his only remedy was to return to his local draft board and sign the exemption form. He telephoned the Argentine consul from the draft board and was told to sign the form. He asked the consul whether he would have trouble returning to this country if he signed the form and was told he would not. He thereupon executed the request for relief (Exhibit 5(b)). Two days later, a reentry permit was issued to him, valid to January 18, 1968. On February 9, 1967, he was again classified 1–A and further processing was postponed. So far as appears from the record, he is still classified 1–A.

On January 27, 1967, the applicant left the United States. After visiting briefly with his wife's relatives in Brazil, he served in the Argentine army for four months. On his return to the United States, his right to readmission was questioned and he was given a hearing before a special inquiry officer, who ordered him admitted. On this appeal, the Service contends that on this record that decision was erroneous.

The principal question presented is whether the applicant was "relieved" from service in our armed forces within the meaning of section 315(a) of the Act.[1] The statute presents a two-pronged requirement before an alien is rendered ineligible to citizenship: an application for exemption plus actual relief from service. The cases have held that, to debar, the relief must be "effective." In exchange for permanent ineligibility to citizenship, the alien must achieve permanent exemption from military serv-

---

[1] Sec. 315. (a) Notwithstanding the provisions of section 405(b), any alien who applies or has applied for exemption or discharge from training or service in the Armed Forces or in the National Security Training Corps of the United States on the ground that he is an alien, *and is or was relieved or discharged from such training or service on such ground*, shall be permanently ineligible to become a citizen of the United States. [Emphasis supplied].

(b) The records of the Selective Service System or of the National Military Establishment shall be conclusive as to whether an alien was relieved or discharged from such liability for training or service because he was an alien.

717

ice; mere temporary postponement of induction will not do.[2] We have viewed the action of the Selective Service System in the applicant's case in the light of the legislative and administrative history of draft exemption. We conclude that what the applicant received from his draft board was less than the permanent exemption which alone constitutes effective relief from military service.

The United States is a party to a number of treaties with various nations containing reciprocal provisions for draft exemption or their respective nationals. Article X of the Treaty of Friendhip, Commerce, and Navigation with Argentina, dated July 27, 853, 10 Stat. 1005, T.S. No. 4, grants exemption from compulory military service to citizens of Argentina residing in the Inited States. This bounty was formerly available to such treaty liens even though they were permanent residents of the United tates. In 1951, some doubt was cast on the continued availability f such exemption to permanent resident treaty nationals. In that ear, Congress amended the Selective Service laws to provide lat ". . . aliens admitted for permanent residence in the United tates shall not be so exempted," 50 U.S.C. App. §456(a) (1964). Conflicting views were expressed among the courts and the Exutive Departments whether the 1951 legislation altered the eexisting treaty provisions.[3] The Selective Service System adred to the view, that, under the 1951 amendment, it lacked wer to exempt permanent resident treaty nationals.[4] Pending ngressional consideration of bills sponsored by the State Dertment which would have clarified the exemption power, the lective Service System adopted internal unpublished procedures ereby permanent resident treaty aliens classified 1–A would tinue to be called for induction, but the induction order would cancelled if they signed a written request for relief. If ineligi- for any other classification, they would continue in class 1–A further processing would be postponed until further notice. he Selective Service memorandum dated November 10, 1966 he applicant's local draft board concerning his case (Exhibit page 23) contains the following significant admonition: " . . .

---

United States v. Hoellger, 273 F.2d 760 (2 Cir., 1960); Cannon v. United es, 288 F.2d 269 (2 Cir., 1961); In re Rego's Petition, 289 F.2d 174 (3 1961); United States v. Lacher, 299 F.2d 919 (9 Cir., 1962).

or a detailed exposition of the conflicting judicial and administrative s, see 42 Op. Att'y Gen. No. 28 (1968) and Itzcovitz v. Selective Service 1 Board No. 6, 301 F. Supp. 168 (S.D.N.Y., 1969).

he Selective Service System's position is set forth at some length in 1 Aspects of Selective Service (1969), at pp. 21–23.

You are reminded that a permanent resident alien is not eligible for Class IV–C on the basis of a request for exemption . . ."

The question was finally settled on April 1, 1968 in an opinion of the Attorney General, 42 Op. Att'y Gen. No. 28. In it, he concluded that the power to exempt permanent resident aliens still exists under the treaties as an independent source of law distinct from the Selective Service statute; and that an alien who applies for and is granted such relief faces the bar of sections 315 and 212 (a) (22). The Director of Selective Service remained unconvinced [5] and when the question was next raised in court, a brief amicus curiae expressing his disagreement was filed in his behalf. The court adhered to the views set forth by the Attorney General, *Itzcovitz* v. *Selective Service Local Board No. 6*, 301 F. Supp. 168 (S.D. N.Y., 1969), appeal dismissed as moot, 422 F.2d 828 (2 Cir., 1970).

While the right of a treaty alien to claim and obtain effective relief from military service may not be regarded as settled, this was not true at the time the applicant in this case applied for relief and obtained cancellation of his induction order in early 1967. In granting him this lesser form of relief, the Selective Service System gave him as much as it felt it had power to give under the law; but this was substantially short of the permanent exemption which alone can constitute effective relief under the court decisions.

As the special inquiry officer points out in his exhaustive and well-reasoned opinion, there is a significant difference between the permanent exemption accorded an alien placed in Class IV–C and the temporary relief which may be made available to an alien classified 1–A by postponing his induction. See *Application of Mirzoeff*, 253 F.2d 671 (2 Cir., 1958); *In re Naturalization of Mirzoeff*, 196 F. Supp. 230 S.D.N.Y., 1961). Under the two-pronged requirement of section 315 (a), only those aliens who achieved permanent exemption by being classified IV–C have been held by the courts to be within the statutory bar. See, *e.g.*, *Lapenieks* v. *INS*, 389 F.2d 343 (9 Cir., 1968), cert. denied 391 U.S. 951; *Ungo* v. *Beechie*, 311 F.2d 905 (9 Cir., 1963), cert. denied 373 U.S. 911; *In re Thanner*, 253 F.Supp. 283 (D. Colo., 1966).

The evidence is uncontroverted that from the time of his initial classification to the present time the applicant has always been classified 1–A. The action of the draft board in continuing him in this classification and suspending further processing "until fur-

---

[5] *Id.*, p. 22.

ther notice" provided him with a form of relief which was illusory at best. It is beside the point to say that the Selective Service System gave him as much relief as it felt it had power to grant. That was the agency which had sole authority to grant or withhold exemption, and that is the agency with which he dealt. Although it may have been mistaken in its conclusion that it was powerless to grant him permanent relief from military service, the fact remains that all it did accord him, by its own account, was a temporary postponement of induction.

While the facts of this case are somewhat different, what the court said in *In re Rego's Petition*, 289 F.2d 174, 175–176 (3 Cir., 1961), seems particularly apropos:

> . . . Thus, the result of his efforts to obtain exemption was not the avoidance of compulsory military service but only the postponement of such required service for several years. To postpone induction in this way is not, in our view, to "relieve" the individual of the required service. It is possible to interpret relief from military service as broad enough to include such postponement of service. But the more normal reading of the language [of section 315(a) of the Act] limits the conception of relief from service to a successful permanent avoidance of that imposition.

> It is also to be considered that the deprivation of the privilege of acquiring citizenship, which an alien in permanent residence normally enjoys, is a substantial penalty. A statute which attaches such a penalty to certain conduct should be construed strictly to avoid an imposition which goes beyond the manifest intent of Congress . . . Certainly such a statute should not be given an unnecessarily broad construction in order to make it apply to circumstances not plainly covered.

The applicant is returning to an unrelinquished permanent residence in the United States. In these proceedings, then, the burden is on the Service to establish that he is inadmissible.[6] In our view, the evidence is insufficient to sustain the Service's burden of proving that he was effectively relieved from service within the meaning of section 315 of the Act.

This conclusion makes it unnecessary for us to consider the applicant's claim that he was really seeking temporary deferment as distinguished from permanent exemption[7] or his contention that his return to the United States does not constitute an "entry".[8]

Accordingly, we will dismiss the appeal.

**ORDER:** It is ordered that the appeal be and it is hereby dismissed.

---

[6] *Kwong Hai Chew v. Colding*, 344 U.S. 590 (1953); *Kwong Hai Chew v. Rogers*, 257 F.2d 606 (D.C. Cir., 1958).

[7] Cf. *Moser v. United States*, 341 U.S. 241 (1951).

[8] Cf. *Rosenberg v. Fleuti*, 374 U.S. 449 (1963).

**BEFORE THE BOARD**
(June 22, 1971)

This is a Service motion for reconsideration of our order of September 17, 1970, dismissing a Service appeal from a special inquiry officer's order admitting the applicant to the United States as a returning resident alien. Execution of our order has been stayed pending decisions on the motion for reconsideration. For the reasons stated below, the motion for reconsideration will be denied.

The facts of the case have been fully stated in our order of September 17, 1970 and need not be fully repeated.[1] The applicant, a native and citizen of Argentina lawfully admitted to the United States in 1961 for permanent residence, registered under our Selective Service laws and was classified 1–A. Ordered to report for induction, on January 16, 1967, he filed a formal request for relief pursuant to our 1853 Treaty with Argentina. Mistakenly concluding that under the 1951 amendment to the Selective Service laws it was powerless to grant a permanent resident complete exemption, the Selective Service System continued his 1–A classification but withdrew his order to report for induction until further notice.

The question presented is whether the applicant was effectively "relieved" from service within the meaning of section 315(a) of the Act, so as to become ineligible to citizenship thereunder and thereby inadmissible under section 212(a)(22) on his return from a brief trip abroad. After an exclusion hearing, the special inquiry officer concluded that the applicant had not been effectively relieved and ordered his admission. Our order of September 17, 1970 dismissed the Service's appeal from that order. In its motion for reconsideration, the Service challenges our prior decision on several grounds, which we shall discuss briefly.

1. The Service contends initially that the applicant was exempted from military service as a matter of law under the treaty, citing *Itzcovitz v. Selective Service Local Board No. 6*, 301 F. Supp. 168 (S.D.N.Y., 1969). That case held that an alien so circumstanced is entitled to exemption, not that exemption is au-

---

[1] We are informed by the Service that since our order of September 17, 1970, the applicant has departed from the United States briefly and on his return has been enlarged on parole pursuant to section 212(d)(5) of the Immigration and Nationality Act. Such departure and return do not, in our estimation, moot the issue pending before us.

tomatic. The Service attempt to equate a legal right to exemption with effective relief as a matter of law flies in the face of reality. The fact remains that the Selective Service officials mistakenly concluded that a permanent resident alien had no such right, and Itzcovitz had to go to court to establish his claim.

Similarly untenable is the Service view that the "not effectively relieved" holding of the courts applies only where the alien is actually inducted into our armed forces.[2] Whatever surface plausibility that view may have previously had is now undermined by the Supreme Court's recent decision in *Astrup v. INS*, 402 U.S. 509, 39 L.W. 4610 (No. 840, October Term, 1970, May 24, 1971). In that case, a permanent resident alien who had applied for exemption and had been classified IV–C was reclassified 1–A following enactment of the 1951 amendment barring exemption for permanent residents. On physical examination, he was found to be unfit, was reclassified IV–F and was never inducted. The Court stated (39 L.W. at p. 4611) : "We think that Congress used the words 'is or was relieved' to provide that an alien who requests exemption from the military service be held to his agreement to relinquish all claims to citizenship *only* when the Government abides by its part of the agreement and completely exempts him from service in our armed forces." (Emphasis in original.) Unlike Astrup, who had for a temporary period enjoyed exempt Class IV–C status, the applicant in the case before us has never been classified other than 1–A.

2. Equally untenable is the Service thesis that the applicant was accorded *de facto* exemption. The assertion that the conclusive effect given to Selective Service System records by section 315(b) of the Act settles the matter merely begs the question. Analysis of those records in evidence reveals that what the applicant actually received fell considerably short of complete exemption. While the form submitted to him for signature refers to "exemption"[3] and while this term appears in the correspondence between Selective Service and Immigration Service officials, it is significantly lacking in the communications addressed to the applicant himself, advising him what he would receive in exchange for his application. He was told that he must sign the application

---

[2] E.g., *United States v. Hoellger*, 273 F.2d 760 (2 Cir., 1961); *Cannon v. United States*, 288 F.2d 269 (2 Cir., 1961); *In re Rego's Petition*, 289 F.2d 174 (3 Cir., 1961); *United States v. Lacher*, 299 F.2d 919 (9 Cir., 1962).

[3] The use of the term "exemption" in the application form and in the letter to the applicant should not be surprising, since that is the statutory term which calls into play the bar of section 315(a).

form if he desired continued "postponement" of induction, and that if he signed the form and continued in 1-A classification, "subsequent processing in your case will be held in abeyance until further notice." This is a far cry from the "complete exemption" which the Court in *Astrup, supra,* held can alone invoke the bar of section 315(a).

3. In support of its contention that the applicant was in fact effectively relieved, the Service cites a line of cases holding that even *de facto* relief accorded through a mistake in law is sufficient to meet the requirements of section 315(a).[4] The cases are readily distinguishable, both in fact and in principle. In those cases, the aliens had been mistakenly placed in exempt Class IV-C, a classification which the courts later concluded they were not entitled to under the law. Nevertheless, the courts held, the fact that the aliens had actually been given the relief they had applied for brought into play the statutory bar.

The applicant's case is quite different. He was never granted the complete exemption he applied for. In his case, the mistake of law, far from conferring on him an exempt status to which he was not legally entitled, actually deprived him of the complete exemption to which he *was* legally entitled. In the cited cases, the courts properly held that *de facto* relief, mistakenly granted, nevertheless constitutes effective relief for section 315(a) purposes. It by no means follows that where exemption is *withheld* through a mistake of law, the statutory bar is equally applicable.

In closing, we must correct a Service misconstruction of our prior order.[5] In that opinion, we nowhere implied that the Attorney General's Opinion, 42 Op. Att'y Gen. No. 28 (1968), and the *Itzcovitz* decision do not govern in this case. Quite the contrary, we pointed out that the Attorney General's Opinion had finally settled the issue and that the court in *Itzcovitz* had endorsed the Attorney General's conclusion and rejected the contrary views of the Selective Service Director. What we did stress was that when the applicant sought relief in early 1967, the issue was not yet resolved and the Selective Service officials misakenly concluded that

---

[4] *In re Skender's Petition,* 248 F.2d 92 (2 Cir., 1957), cert. denied 355 U.S. 931; *Rosio v. Shaughnessy,* 134 F. Supp. 217 (S.D.N.Y., 1954).

[5] (Motion for Reconsideration, p. 6): "The implication in the Board decision (p. 5) that the Attorney General's Opinion and *Itzcovitz* do not govern in this case, because they came after Mincheff was relieved from military service, is disturbing. In all significant aspects the facts in *Itzcovitz* are the same as here. There is no reason why a different rule of law should apply. If Itzcovitz was exempted, as the court held, then equally, Mincheff received exemption."

they lacked power to grant him complete exemption. It is this fact which underlies our conclusion that what the draft board actually gave him fell substantially short of the permanent exemption which alone can constitute effective relief for section 315(a) purposes.

**ORDER:** The Service motion for reconsideration is denied.